AFRAM BROS. CO., a corporation, Libelant,

v.

THE Steamship FAIRHEAD, her engines, tackle, apparel and furniture, Respondent, and Ulster Steamship Company, Limited, Claimant-Respondent.

No. 59-C-138.

United States District Court
E. D. Wisconsin.

March 29, 1961.

Harney B. Stover and Harney B. Stover, Jr., Milwaukee, Wis., for libelant.

Ben G. Slater, Milwaukee, Wis., Stuart B. Bradley, Chicago, Ill., for respondents.

GRUBB, District Judge.

This is an admiralty action in which Afram Bros. Co., is seeking recovery for damage which was allegedly inflicted to its dock by the Steamship Fair Head (hereafter referred to as "Fair Head") while the latter was moored at said dock. Since the issue of damages was severed for purposes of the trial, this decision concerns itself solely with the question of respondents' liability.

The Afram dock is located on the west bank of the Kinnickinnic River in the Port of Milwaukee's inner harbor. In a north-northeasterly direction from the river face of the dock, there is a clear stretch of water for approximately 2,000 feet. At the end of that distance the Kinnickinnic River converges with the Milwaukee River, and the two flow in an easterly direction through the channel which connects the inner and outer harbors.

This channel or entrance into the inner harbor is approximately 1,800 feet long and 500 feet wide. Directly opposite the mouth of this channel and at a distance of about 3,600 feet therefrom is the main entrance through the U. S. Government breakwater, which forms an almost 4 mile long protective barrier in front of the outer harbor.

On May 4, 1958, the Fair Head sailed through the main entrance of the Government breakwater and into Milwaukee's outer harbor. After waiting for and receiving directions from its shipping line's local agent, the Fair Head proceeded through the channel leading in-to Milwaukee's inner harbor, turned southward into the Kinnickinnic River, and moored at the Afram dock. The Fair Head remained at that dock from noon, May 4th, until 7:00 A.M. on May 5th when it departed. At no time had the Fair Head received permission from the libelant to use the latter's dock.

The Fair Head is an ocean-going vessel with a dead weight in excess of 2,000 tons. It is 258 feet 2½ inches long with a 42 foot beam. On the Great Lakes it is known as a "canaler" type vessel.

The Fair Head was held to the Afram dock by means of six manila hawsers, each measuring six inches in circumference. Two hawsers were attached to a metal cleat at the south end of the Afram dock wall, while one hawser was tied to a mooring post 135 feet north of the metal cleat and 10 feet back from the dock wall. The remaining three hawsers were on two metal cleats in that portion of the dock wall which extended beyond the Afram property and onto the adjoining property of the P & V Atlas Company. Four bundles of wood, each consisting of approximately twenty-four young saplings bound together by wire, served as fenders or bumper guards between the Fair Head and the dock wall.

In the opinion of the court, the evidence established that the Fair Head caused no material damage to the Afram dock on the dates in question. See United Geophysical Company v. Vela, 5 Cir., 1956, 231 F.2d 816.

Libelant's primary allegation is that the Fair Head caused two large cracks in the face of libelant's concrete dock wall and also increased the bulging of the dock wall.

Captain Ray H. Knight, Harbor Master for the Port of Milwaukee and one of the few impartial witnesses at the trial, testified that his inspection trips of the inner harbor took him past the Afram dock 300 to 400 times in an eight month shipping season. During those trips he saw that the outside shell of the Afram dock wall was cracking.

Captain Knight also testified that on another occasion, when he was on the Afram dock, he noticed five or six clearly visible cracks in the dock wall. The Captain stated further that in 1956 the Afram dock wall bowed out 1½ to 2 feet.

Four hours after the Fair Head left the Afram dock, Captain Knight, at the request of one of the Afram brothers, inspected the dock area. At that inspection Captain Knight perceived no difference in the condition of the dock wall as compared to its appearance prior to the Fair Head's arrival.

Other witnesses also testified that the cracks and bulge present in the dock wall after the Fair Head's departure were all there before the Fair Head had moored at the Afram dock.

Furthermore, expert testimony, based on an inspection of the dock wall in 1960 when the fill behind the concrete wall had been removed, placed the age of the cracks in question at eight to fifteen years. The expert also concluded that the bowed and cracked condition of libelant's dock wall was caused by the excessive weights which libelant had deposited on the dock over the years. This great pressure upon the earth over the dock's substructure compressed the ground and pushed it outward against the dock wall.

Libelant also alleges that the Fair Head, while moored, was constantly thrown against the Afram dock wall by strong winds and high seas.

During the time that the Fair Head was berthed at the Afram dock, the U. S. Weather Bureau's report showed that the wind was from the north-northeast, and its velocity varied from 22 to 36 miles per hour, with gusts up to 40 miles per hour. Because the Weather Bureau's wind instruments were at that time located 88 feet above the ground, the velocity of the wind at water level was approximately one-half of the reported figures.

Captain Knight testified that at 8:00 A.M. on May 4th, the waves in the Kinnickinnic River in front of the Afram dock were not any higher than 6 or 7 inches. He stated that with a 30 to 40 mile per hour wind, a ship the size of the Fair Head would lie calmly at the Afram dock and would not range more than a few inches.

Testimony of individuals who were actually on the Fair Head while she was at the Afram dock indicated that the vessel was firmly against her berth and that there was no appreciable movement of the ship.

Moreover, the third mate of the Fair Head stated that the ship's gangway and mooring lines were in the same condition and position at the time the ship was readying to leave as they had been when the ship docked. It was undisputed that any appreciable movement of the ship would have affected the condition and position of the gangway and mooring lines.

The evidence also showed that if the Fair Head had damaged the dock as claimed, there would have been severe damage to the hull of the ship. According to uncontradicted testimony, there was no such hull damage.

Libelant also alleges that the pull of the Fair Head's lines on the mooring post located 10 feet behind the dock wall loosened the post and contributed to the subsequently discovered displacement of the dock's substructure. The court finds from the evidence that the Fair Head's lines put very little stress on the mooring post. In the court's opinion, any dislocation of the mooring post and displacement of the dock's substructure were not caused by the use that the Fair Head made of that post.

Finally, libelant contends that the Fair Head damaged the wooden whaling timber which was on the dock wall and which served as a permanent bumper between the wall and a moored vessel. The court is satisfied from the testimony that the whaling timber was in no worse condition after the Fair Head departed than it had been when the Fair Head arrived.

In conclusion, the court is of the opinion that the damaged condition of libel-

ant's dock was due to the excessive weight which libelant had consistently put on its dock in the course of its business since 1949 when it acquired the property.

Proctors for respondents are directed to prepare and submit proposed findings of fact, conclusions of law, order for judgment, and judgment in conformity with this decision, submitting the same to proctor for the libelant for approval as to form only.